## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**TRACY PIXLEY**
**Plaintiff,**

**v.**                                                        **No. 23-cv-3626-ZMF**

**KILOLO J. KIJAKAZI,**
*Acting Commissioner of Social Security*,

**Defendant.**

## <u>MEMORANDUM OPINION</u>

On February 7, 2019, Plaintiff Tracey Pixley filed for Supplemental Security Income Benefits ("SSI"). *See* Admin. R. ("AR") 18, ECF No. 8.[1] An Administrative Law Judge ("ALJ") denied her request. AR 15. Ms. Pixley now challenges that decision, claiming that the ALJ incorrectly found that she was not disabled and failed to include her moderate limitations in his hypothetical questions to the Vocational Expert ("VE") when determining her residual functional capacity ("RFC"). *See* Pl.'s Mot. for J. of Reversal ("Pl.'s Mot.") 1, ECF No. 13.

After considering the parties' submissions and the Administrative Record, the undersigned recommends that the Court DENY Plaintiff's Motion for Judgment of Reversal and GRANT Defendant's Motion for Judgment of Affirmance.

---

[1] The Administrative Record contains over ninety exhibits. *See* ECF No. 8. For ease of reference, the citations to the Administrative Record will cite to the consecutive page numbers provided in the lower right-hand corner of each page.

I.      **BACKGROUND**

A.      <u>Statutory Framework</u>

The Social Security Act provides benefits to individuals with disabilities. *See* 42 U.S.C. § 1382(a)(1). To claim SSI, a plaintiff must prove that they are "disabled." An individual is disabled if they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). The impairment must render them unable to return to previous work or "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step evaluation process to determine whether a claimant is disabled, as defined by the Social Security Act. *See* 20 C.F.R. § 416.920(a). The burden of proof rests with the claimant for the first four steps, then shifts to the SSA for the last step. *See Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). At step one, the claimant must prove they are not currently engaged in a "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). At step two, the claimant must show that they have a "severe impairment" or a "combination of impairments" that "significantly limits [their] physical or mental ability to do basic work activities." *Id.* §§ 416.920(a)(4)(ii), 416.920(c). At step three, the ALJ must determine whether the claimant's impairment(s) meets or is equal to one of the criteria listed in Appendix 1. *See id.* § 416.920(a)(4)(iii). If the ALJ finds that the claimant meets the requirements, then they are disabled. *See id.* If not, then the ALJ proceeds to step four. *See id.* At step four, the ALJ must decide if the claimant has "the [residual functional capacity (RFC)] to perform the requirements of [their] past relevant work." 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f). Put another way, the ALJ must determine "the most [the claimant] can still do despite [their] limitations." *Id.* §

416.945(a)(1) (defining RFC). If the ALJ finds that the claimant has the RFC to return to their previous work, then they are not disabled. *See id.* § 416.920(a)(4)(iv). If a claimant cannot return to their previous work, then the ALJ proceeds to step five. There, the ALJ must determine, based on the claimant's RFC, "age, education, and work experience," whether the claimant can find any other work in the national economy. *Id.* § 416.920(a)(4)(v). If the claimant cannot adjust to other work, then they are disabled. *See id.*

    B.    <u>Factual Background</u>

        *i.*    *Medical Evidence*

In 1999, Ms. Pixley was diagnosed with major depressive disorder ("MDD"). *See* AR 107. Even with treatment, she still had trouble sleeping, crying spells, and feelings of hopelessness, and she reported two hospitalizations for attempted suicide. *See* AR 386, 491–92. She worked as a cashier for six months in 2003 and six months in 2006. *See* AR 240, 244, 264. In 2007, Ms. Pixley was diagnosed with lupus, which causes chronic fatigue, joint pain, facial rashes, and photosensitivity. *See* AR 524. Her medical records reflected a hypertension diagnosis in 2013. *See* AR 524. In early 2017, Ms. Pixley began work as a cashier once again. AR 244.

In January 2018, Ms. Pixley saw Dr. Gail Kerr, a rheumatologist, for lupus treatment. *See* AR 469. She did not follow up and subsequently returned to her primary care provider. *See* AR 22. For the next year, Ms. Pixley saw multiple healthcare providers for her MDD. *See* AR 410–412, 434–455, 469–476. However, she missed treatment sessions and was noncompliant with her medications due to side effects. *See* AR 435, 594. In May 2018, she stopped working as a cashier due to her symptoms. *See* AR 264.

In June 2020, Ms. Pixley saw Dr. Jett, a psychologist, for a consultative examination to assess cognitive functioning. *See* AR 489–96. Ms. Pixley claimed that her family regularly assisted

her with daily tasks like cleaning, cooking, and laundry. *See* AR 495, 579. Overall, Dr. Jett found that Ms. Pixley's cognition was likely in the average range and that she had a mild memory impairment. AR 494. Dr. Jett also found that Ms. Pixley had moderate limitations in interacting with others and maintaining a consistent pace in completing tasks. *See* AR 495. In September 2020, Ms. Pixley saw NP Nina Mesadieu for hypertension, reporting an intermittent headache. *See* AR 500. NP Mesadieu discussed treatment options and referred Ms. Pixley for MDD treatment. *See* AR 500.

    ii.  *Social Security Administration Review*

  On February 7, 2019, Ms. Pixley filed for SSI. *See* AR 18. She claimed that her disability began on June 1, 2018. *See* AR 18, 231–236. The ALJ held three hearings. *See* AR 38. At the final hearing, Ms. Pixley's attorney argued that Ms. Pixley met two of the criteria listed in Appendix 1 to Subpart P of 20 C.F.R. § 404, depressive, bipolar and related disorders and anxiety and obsessive-compulsive disorder. *See* AR 46. In turn, the ALJ first asked the VE whether being "off task greater than 10 percent of the time on a regular and consistent basis" or frequently absent would preclude an individual from employment. AR 47. The VE stated that either would preclude employment. *See* AR 48. Next, the ALJ asked about a hypothetical individual with Ms. Pixley's background, age, and prior work experience as a cashier, and who had the ability to complete a full range of physical work so long as it did not require performing "more than simple one to four step routine repetitive tasks in a low stress work environment." AR 48. The VE explained that such an individual could find employment other than as a cashier, such as: a sweeper/cleaner, inspector/grader, night cleaner, marker, or racker. *See* AR 48.

  Afterwards, Ms. Pixley testified about her pain and symptoms. *See* AR 50–53. Ms. Pixley stated that she isolated herself and had a poor appetite. *See* AR 50. She further stated that she was

depressed, had trouble caring for herself and standing for extended periods. *See* AR 50. She claimed that outside of her daughter helping her with groceries, she did everything herself. *See* AR 50. She described her issues with concentration, stating that it was difficult for her to "read two pages in a book without losing [her] focus" and that she had trouble keeping track of time. AR 51. Additionally, she claimed that she stopped taking her antidepressants because it "[made] her symptoms worse," and caused dizziness. AR 52. Lastly, she stated that she "[thought] about people dying [or] trying to kill her," and had nightmares. AR 53. However, there were no expert medical opinions supporting these claims, leading the ALJ to order an internal medicine exam to assess Ms. Pixley's lupus and hypertension. *See* AR 54. The ALJ also ordered a consultative exam to assess her cognitive functioning. *See* AR 54.

Ms. Pixley saw NP Ellison-Ruddock for the internal medicine exam. *See* AR 567–581. There, Ms. Pixley complained of back and leg pain, and reported that her last lupus flare up had been two or three years prior. *See* AR 568. NP Ellison-Ruddock found no lupus or hypertension symptoms and concluded that Ms. Pixley had "no physical impairments." *See* AR 570, 581.

Ms. Pixley saw Dr. Williams for the consultative exam. *See* AR 54, 582–605. Ms. Pixley could complete simple calculations and serial 7s "very slowly." AR 584, 596. Dr. Williams concluded that Ms. Pixley's memory was "mildly impaired due to emotional distress secondary to depression," AR 584; and her intellectual function was "below average," AR 596. Dr. Williams also found that Ms. Pixley had mild limitations in performing at a consistent pace; moderate limits in understanding, remembering, and applying complex instructions; and moderate limits in "us[ing] reason and judgement to make work-related decisions" and social interaction. AR 584–85, 596–97. Dr. Williams diagnosed Ms. Pixley with an unspecified anxiety disorder. *See* AR 590, 597.

On January 27, 2023, the ALJ denied Ms. Pixley's claim. *See* AR 15. At step one, the ALJ found that Ms. Pixley had not engaged in a substantial gainful activity since February 7, 2019. At step two, he concluded that her "depression, [MDD], unspecified trauma and stressor related disorders, and adjustment disorder, with anxiety" were severe impairments. AR 21. However, the ALJ determined that her lupus and hypertension were not severe impairments due to Ms. Pixley's lack of treatment and her medication noncompliance. *See* AR 26. He also relied on the consultative exam results, which showed no physical symptoms from these impairments. *See* AR 26, 570, 581.

At step three, the ALJ determined that Ms. Pixley's impairments did not meet the criteria in Appendix 1. *See* AR 26. The ALJ dismissed her claim for anxiety and obsessive-compulsive disorder in part because she had "no diagnosis of anxiety disorder until March 2022, or less than 12 months ago." AR 24, 597. The majority of the ALJ's analysis then focused on Ms. Pixley's depressive disorders. *See* AR 24–25. The ALJ relied on Dr. Jett's and Dr. Williams's psychological examinations to find that Ms. Pixley did not meet the depressive, bipolar and related disorder listing. *See* AR 27–29. The ALJ found that Ms. Pixley had moderate limitations in completing tasks, but only when "completing a normal workday and week and performing at a consistent pace when in work situations involving the performance of more than 1-2 or 1-4 step routine, repetitive tasks." AR 28. Additionally, the ALJ did not give much weight to Ms. Pixley's claims of pain because he concluded that her "arguments . . . [we]re not supported or consistent with the evidence of record, but appear[ed] more based on [her] subjective complaints." AR 29. Similarly, the ALJ declined to give much weight to prior medical findings because the reported limitations were mild and contained no evidence of "treatment prior to June 2019 for mental health disorders." AR 29.

At step four, the ALJ used a two-part process to determine Ms. Pixley's RFC. AR 25. First, the ALJ found that her impairments reasonably could produce her symptoms. AR 25. Second, he

found the record did not support the alleged "intensity, persistence and limiting effects of her symptoms." AR 26. Relying on the VE's testimony, the ALJ concluded that Ms. Pixley did not have the RFC to return to her previous work. *See* AR 21.

At step five, the ALJ found that Ms. Pixley could find another job in the national economy. *See* AR 30–31. The ALJ acknowledged that Ms. Pixley could not work at all exertional levels because of her moderate limitations, including her MDD and unspecified trauma disorders. *See* AR 30. The ALJ referred to the medical-vocational rules listed in appendix 2 of 20 C.F.R. § 404 and found that § 204.00, which refers to individuals capable of performing "heavy work," applied. *See* AR 30. The ALJ went on to explain that § 204.00 was appropriate because Ms. Pixley's limitations were non-exertional and did not involve her physical strength. *See* AR 30. The ALJ also stated that he relied on SSR 85-15, which gives a framework for determining nonexertional limitations. *See* AR 30. Thus, the ALJ determined that Ms. Pixley was not disabled. *See* AR 31.

The Appeals Council denied Ms. Pixley's request for review. *See* AR 1. On November 30, 2023, she filed her complaint in this court. *See* Compl. ¶ 31, ECF No. 1. On May 21, 2024, Judge Kelly, with the parties' consent, referred this case to the undersigned for all purposes. *See* Min. Order (May 21, 2024). Pending before this court are Ms. Pixley's Motion for Judgement of Reversal and the Defendant Social Security Commissioner's Motion for Judgment of Affirmance. *See* Pl.'s Mot.; Def.'s Mot. for J. of Affirm. ("Def.'s Mot."), ECF No. 14.

## II.   LEGAL STANDARD

When reviewing the SSA's disability determination, the district court acts in an appellate role and must uphold the determination "if it is supported by substantial evidence and is not tainted by an error of law." *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Bulter* 353 F.3d at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The standard is highly deferential, requiring "more than a scintilla," but is satisfied by "something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003). As such, the "reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment 'concerning the credibility of the evidence with its own.'" *Goodman v. Colvin*, 233 F. Supp. 3d 88, 104 (D.D.C. 2017) (quoting *Crosson v. Shalala*, 907 F. Supp. 1, 2 (D.D.C. 1995)).

That said, the ALJ must establish a "logical bridge" between their conclusions and the evidence so that a reviewing court "'may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.'" *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). "[T]he plaintiff bears the burden of demonstrating that the Commissioner's decision was not based on substantial evidence or that incorrect legal standards were applied." *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C 2015) (internal quotations marks and brackets omitted).

## III.   DISCUSSION

Ms. Pixley raises three challenges to the ALJ's decision. *See* Pl.'s Reply in Supp. of Mot. for J. of Reversal ("Pl.'s Reply") 1, ECF No. 17. First, she argues that the ALJ erroneously found that she could perform all physical work, up to and including very heavy work. Pl.'s Mot. at 11. Second, she claims the ALJ failed to properly account for her limitations in the hypothetical he posed to the VE. *See* Pl.'s Reply at 1. Finally, she argues that she meets the listings for depressive and anxiety disorders. *See id.*

A.     Ms. Pixley's RFC

"[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 20 (D.D.C. 2009) (internal quotation marks and brackets omitted). The ALJ must then "assess[] the persistence and intensity of the claimant's pain as well as the extent to which it impairs her ability to work." *Butler*, 353 F.3d at 1004. The ALJ's determination "must contain specific reasons for the finding of [intensity and persistence], supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Washington v. Saul*, No. 20-cv-662, 2021 WL 2514691, at *7 (D.D.C. June 18, 2021).

An ALJ may rely on inconsistent statements and noncompliance with treatment plans to discount a claimant's subjective complaints. *See, e.g.*, *Hall v. Kijakazi*, No. 20-cv-2073, 2022 WL 343504, at *13 (D.D.C. Feb. 4, 2022). In *Hall*, the ALJ "appropriately evaluated plaintiff's subjective complaints against the backdrop of the full record of evidence available." *See id*. The ALJ had "considered plaintiff's purported daily activities; her testimony regarding the duration and frequency of her bipolar symptoms; the contrast in her behavior and affect across various evaluations in the record; the effectiveness of the psychiatric medication in alleviating her symptoms; and her inconsistent engagement with psychotherapy for relief." *Id.*

The ALJ here correctly concluded that the "intensity, persistence and limiting effects" of Ms. Pixley's symptoms were not "entirely consistent with the medical evidence and other evidence in the record." AR 26. To reach this conclusion, the ALJ referenced Ms. Pixley's inconsistencies in her daily activities, inconsistent treatment, and noncompliance with her medications. *See* AR

25–29. Thus, the ALJ did not dismiss her complaints, but instead "assigned them an appropriate weight consistent with [his] determination [of consistency]," meaning his decision is supported by substantial evidence. *Hall*, 2022 WL 343504, at *13.

1.   Inconsistencies in Daily Activities

"ALJs may consider a claimant's daily activities when evaluating the severity and credibility of reported impairments." *Bullock v. Kijakazi*, No. 20-cv-1764, 2023 WL 5023380, at *6 (D.D.C. Aug. 8, 2023) (citing 20 C.F.R. § 419.929(c)(3)). The ALJ reasonably found that Ms. Pixley's description of her daily activities deviated enough from objective medical evidence to determine she was not disabled. *See Bullock,* 2023 WL 5023380, at *6; AR 26–29. First, the ALJ noted many of Ms. Pixley's symptoms, including that she "does not socialize" and "is not motivated." AR 25. Next, he noted that the consultative examination in 2022 with Dr. Williams alternatively showed that she was cooperative and that "her thought processes were coherent and goal directed." AR 28. Likewise, although Ms. Pixley claimed she "cannot maintain her personal hygiene" or do laundry, the ALJ noted that the consultative examinations revealed that Ms. Pixley "was casually dressed, with satisfactory grooming," could "groom herself," and could "launder clothes." AR 28; *see, Bullock*, 2023 WL 5023380, at *6 (finding that the claimant could adequately groom himself and clean, despite claiming that his daily activities were far less robust). Ms. Pixley's exam with Dr. Jett revealed similar inconsistencies. *See* AR 27.

Ms. Pixley conceded that she only needed "a little help at home, cooking, cleaning, and laundering clothes." AR 26. In fact, she independently "cooked 2 to 3 times a week, cleaned once a week and did laundry once a week. She showered 2 [to] 3 times a week, and could dress herself." AR 26 (citing AR 568). The ALJ concluded that Ms. Pixley "could dress, bathe, groom herself, do light cleaning, manage money, and take public transportation independently." AR 27 (citing 596).

10

Her daily activities "demonstrated that while the claimant may be limited by her mental impairments, she could still perform activities that require attention and concentration, as well as understand at least simple, routine tasks and instructions." *Bullock,* 2023 WL 5023380, at *6 (holding that the ALJ reasonably found that the plaintiff was not disabled based on his ability to carry out activities such as using public transportation, clean his home, and visiting his children).

Thus, "[the ALJ] found that [Ms. Pixley's] alleged severity of symptoms was not entirely in accord with her professed daily activities, taking into account the relevant limitations[,]" and adjusted her RFC accordingly. *Colter v. Kijakazi,* No. 20-cv-632, 2022 WL 715218, at *14 (D.D.C. Mar. 10, 2022) (granting the defendant's motion of affirmance because the ALJ reasonably compared the plaintiff's daily activities with objective medical evidence). Specifically, the ALJ accounted for her moderate limitations by restricting her RFC to work comprised of:

> [S]imple 1-4 step routine, repetitive tasks, in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, and where there would only be occasional contact with coworkers and supervisors, and no contact with the general public, and that did not require a fast pace or production rate quotas, as would customarily be found on an assembly line.

AR 25; see *Hall*, 2022 WL 343504, at *10 (finding that an ALJ appropriately accounted for a plaintiff's moderate limitations in concentration, persistence, and pace because she limited the plaintiff's RFC to simple tasks in low stress work environments).

### 2. Evaluating Inconsistent Medical Opinions

An ALJ must "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c. "Instead, the ALJ must decide how persuasive she finds all medical opinions according to five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and

(5) other factors that tend to support or contradict a medical opinion." *Tiana O. v. Kijakazi*, No. 20-cv-2051, 2023 WL 5348747, at *6 (D.D.C. Aug. 21, 2023) (internal quotation marks omitted).

"The most important factors in the persuasiveness analysis are (1) supportability—that is, how well the medical source supported the opinion with "objective medical evidence and supporting explanations"—and (2) the consistency of the opinion with other evidence in the record." *David W. v. Kijakazi*, No. 21-cv-3370, 2023 WL 5035935, at *10 (D.D.C. Aug. 8, 2023) (quoting 20 C.F.R. § 416.920c(b)(2), (c)(1)–(2)). The ALJ is required to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [a claimant's] determination." 20 C.F.R. § 404.1520c(b)(2). However, "there is no specific format required for addressing supportability and consistency, and those terms need not be used in the opinion, provided that there is sufficient explanation for a reviewing court to determine that the ALJ analyzed those factors." *David W.*, 2023 WL 5035935, at *12. So long as the ALJ sufficiently develops the record and gives enough explanation for judicial review, they have adequately addressed the supportability and consistency factors. *See id.* (citing *Jones v. Barnhart*, 364 F.3d 501, 504–05 (3d Cir. 2004)).

The ALJ properly articulated the supportability and consistency factors when discussing the persuasiveness of Ms. Pixley's medical opinions prior to 2019. *See* AR 29; 20 C.F.R. § 416.920c(a). That is to say, "the ALJ not only mentioned differences between the medical source opinion and other record evidence, but he also explained why he found those differences important for assessing the persuasiveness of the medical source opinion." *David W.*, 2023 WL 5035935, at *12; *see* AR 29. The ALJ conceded that he was "persuaded for the periods evaluated [in the medical opinions prior to 2019.]" AR 29. While the ALJ believed that those findings were consistent with

the evidence from that time period, he felt that Ms. Pixley's current records warranted "more moderate limits" than those found in previous records. AR 29.

The ALJ decided that the 2022 examination by Dr. Williams was "more consistent with the evidence received after the [opinions prior to 2019] were prepared." *See* AR 29. The ALJ recognized improvements and deteriorations between the prior and recent records, reflecting the ALJ's objectivity and thoroughness. *See Washington*, 2021 WL 2514691, at *7. For example, Ms. Pixley's appearance and ability to carry out certain tasks in 2022 was greatly improved over the pre-2019 assessments. AR 29, 595. On the flip side, the pre-2019 records reported that Ms. Pixley had "no limits in any B criteria, except mild limits in concentration, persistence, and pace." AR 29 (citing AR 80). However, in the 2022 assessment, Dr. Williams noted that Ms. Pixley had "moderate limitations . . . [in] interact[ing] with coworkers, supervisors, and the public." AR 597 The ALJ agreed with Dr. Williams' more severe assessment because it was in line with the isolating tendencies Ms. Pixley had "mentioned to some of her providers." AR 28, 27. Thus, the ALJ's "analysis squarely addresses the consistency factor, as it determines that [the records prior to 2019 were] not consistent with other, [more current] evidence in the record. It also addresses the supportability factor, in that it notes that [the records were] not well-supported by [current] objective medical evidence." *Kory D. v. Kijakazi*, No. 20-cv-3571, 2023 WL 6538543, at *7 (D.D.C. Oct. 6, 2023) (ALJ properly assessed consistency and supportability factors by listing differences between a medical opinion and the rest of the record); *see* AR 29.

### 3.   Additional Factors

Outside of an individual's daily activities, an ALJ should also consider "the location, duration, frequency, and intensity of the individual's . . . symptoms," the "effectiveness[ ] and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms,"

and "treatment, other than medication, the individual receives or has received for relief." *Grant v. Astrue*, 857 F. Supp. 2d 146, 156 (D.D.C. 2012). Here, the ALJ listed Ms. Pixley's alleged symptoms in detail, and weighed them against objective medical evidence to evaluate her subjective complaints. S*ee supra*. Moreover, the ALJ discussed the side effects of her medications and her noncompliance with treatment plans at step three. *See infra* Section III.C.ii.

B.    The ALJ's Hypothetical to the VE

The "hypothetical question[s] that the ALJ pose[s] to the vocational expert [must] accurately reflect[] Plaintiff's limitations as determined by the ALJ." *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 37 (D.D.C. 2014). "[O]nly the impairments that the ALJ has found to be credible need to be discussed in the hypotheticals." *Pinkney*, 675 F. Supp. 2d at 19.

After determining Ms. Pixley's limitations, the ALJ spent significant time questioning the VE. *See* AR 44–49. The ALJ's hypothetical asked about jobs that would "not requir[e] performing more than simple one to four step routine repetitive tasks in a low stress work environment, defined as requiring only occasional contact with coworkers and supervisors and no contact with the general public and which would require a fast paced or production quotas." AR 48.

Ms. Pixley argues that the ALJ failed to mention her "moderate limitations in concentration, persistence, or pace," and to account for her inability to perform daily activities. Pl.'s Reply at 2. Ms. Pixley asserts that "'the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.'" Pl.'s Mot. at 11 (quoting *Petty v. Colvin*, 204 F. Supp. 3d 196, 206 (D.D.C. 2016)). However, unlike the plaintiff in *Petty*, Ms. Pixley is able to carry out simple tasks. *See* AR 596. In *Petty*, there was no evidence that proved that the claimant was capable of sustaining concentration for extended periods. 204 F. Supp. 3d at 208. In contrast, Ms. Pixley's "past medical

14

and psychiatric examinations, [revealed] plaintiff had been 'alert and oriented to person, place and time,' and exhibited 'intact attention and concentration.'" *Hall,* 2022 WL 343504, at \*10; *see* AR 596. And the ALJ's hypothetical here was in accordance with this updated information about Ms. Pixley. *See* AR 596. In other words, the ALJ limited the complexity of the tasks to account for her moderate limitations in maintaining concentration, persistence, and pace when performing complex tasks. *See McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (ruling that an ALJ's failure to explicitly include moderate limitations in concentration, persistence, and pace was harmless because the hypothetical still accounted for the combined effect of the plaintiff's limitations).[2] Likewise, though the ALJ did not explicitly mention "unskilled jobs" in his hypothetical, all of the jobs the VE provided were unskilled, meaning that the VE's opinion still accounted for Ms. Pixley's limitation. *See* AR 48–49; *Glass v. Saul*, No. 19-cv-1804, 2021 WL 1405726, at \*6 (D.D.C. Apr. 14, 2021), *aff'd sub nom. Glass v. Kijakazi*, No. 21-cv-5141, 2022 WL 566488 (D.C. Cir. Feb. 23, 2022), *reh'g denied*, No. 21-cv-5141, 2022 WL 2836757 (D.C. Cir. July 14, 2022) (holding the ALJ's failure to include the term "unskilled" in the hypothetical was aa harmless error because the VE still provided jobs that were "unskilled").

In addition, the ALJ adequately included information about Ms. Pixley's background in the hypothetical. *See* AR 48. The ALJ included her relevant experience by describing the individual

---

[2] Ms. Pixley failed to offer specific evidence that she was unable to maintain concentration for sustained periods of time. *See* Pl.'s Mot. at 10. Nor did Ms. Pixley respond to the Defendant's argument that any error related to this issue was harmless. *See* Def.'s Mot. at 15. And failing to reply to an argument concedes it. *See Caitlin O. v. Kijakazi*, No. 17-cv-1939, 2023 WL 4744068, at \*5 n.4 (D.D.C. July 25, 2023). Regardless, "[e]ven if this case were remanded on the grounds that the ALJ himself did not limit the hypothetical to [explicitly address this limitations] the [VE] would provide the same answers, based on which the ALJ would reach the same result. . . . [Any] error of not adequately incorporating [] concentration-based limitations in [the VE's hypothetical] is therefore harmless." *Lisa H. v. Kijakazi*, No. 20-cv-3322, 2023 WL 7156518, at \*10 (D.D.C. Oct. 31, 2023); *see* AR 596.

as "between the ages of 46 and 50, has a ninth grade education and has past relevant work experience as a cashier." AR 48. An ALJ's hypothetical can also adequately capture the plaintiff's background by describing an individual "with the same RFC determination." *Fleming v. Saul*, No. 19-cv-3420, 2022 WL 17370208, at *10 (D.D.C. Aug. 8, 2022). The ALJ did just that by inquiring about a "person who could only work four hours a day or missed two days a month regularly." AR 48. Ultimately, "[t]he ALJ's hypothetical questions accurately describe[d] [Ms. Pixley]'s impairments so that the vocational expert c[ould] adequately assess whether jobs exist[ed] for [her]," regardless of the exact wording of the hypothetical. [3] *Butler*, 353 F.3d at 1005 (quoting *Simms*, 877 F.2d at 1050); *see* AR 48.

Lastly, Ms. Pixley claims that the ALJ failed to account for her subjective complaints about her daily activities in the hypothetical to the VE. Pl.'s Reply at 2. In doing so, Ms. Pixley relies on *Wilks v. Apfel*, which reversed the ALJ where he failed to mention the claimants' subjective claims of pain and did not properly inform the claimant of his rights. 113 F. Supp. 2d 30, 34 (D.D.C. 2000). However, the court there noted that the ALJ "did not find and, based on plaintiff's testimony and the medical records, could not find that plaintiff suffered no pain." *Id.* at 34. In contrast, the ALJ here explained why he discounted Ms. Pixley's claims of pain. *See supra*. More importantly, "the ALJ's opinion makes clear that he recognized and understood Plaintiff's alleged limitations as to her ability to perform daily activities," which is what led him to account for moderate limitations in concentration, persistence, and pace in his hypothetical. *Colter*, 2022 WL 715218, at *14; *see* AR 48. Thus, the hypothetical adequately described Ms. Pixley's limitations.

---

[3] Ms. Pixley also claims that "the ALJ relied on VE testimony that a hypothetical claimant allegedly comparable to Ms. Pixley could perform her past work." Pl.'s Reply at 2. However, the VE explicitly stated that Ms. Pixley could not return to her past work, and the ALJ's opinion reflected that determination. *See* AR 48, 29–30.

C.      The Listings for Depressive and Anxiety Disorders

Depressive bipolar and related disorders, and anxiety and obsessive-compulsive disorders each have three paragraphs of requirements, labeled A, B, and C. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2, § 12.00(A)(2)(c). To meet the criteria for either disorder, a claimant's impairment must fall under paragraphs A and B or A and C. *See id.* The parties agree that Ms. Pixley meets the requirements of paragraph A. *See* Pl.'s Reply at 6; Def's Mot. at 24. However, they disagree about whether she meets paragraph B or C. *See* Def's Mot. at 24–25.

    *i.      Paragraph B Criteria*

Paragraph B requires a claimant to show an "[e]xtreme limitation of one, or marked limitation of two" in their ability to: "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; or adapt or manage oneself." *Id.* §§ 12.04, 12.06 (internal quotation marks and brackets omitted). Moderate limitations or below do not qualify. *Id.* § 12.00(F)(2). An "extreme limitation" is so severe that a claimant is unable to function in the area, whereas a "marked limitation" refers to one that "seriously limits" the ability to function. *Id.* §§ 12.00(F)(2)(d), 12.00(F)(2)(e). A moderate limitation is one that leaves a claimant "mildly impaired." *Devylle C. v. Kijakazi*, No. 22-cv-01061, 2023 WL 4864600, at *4 (D.D.C. July 31, 2023).

The ALJ properly concluded that Ms. Pixley failed to meet the paragraph B criteria. *See* AR 23. First, the ALJ correctly found that Ms. Pixley had moderate limitations in the ability to understand, remember, or apply information. AR 23. The ALJ based this conclusion on evidence demonstrating that although Ms. Pixley had "below average" intellectual functioning, her recent and remote memory was only "mildly impaired." AR 23. "[M]ildly impaired" memory qualifies as a moderate limitation for this subcategory. *See Devylle C.*, 2023 WL 4864600, at *4 (claimant

had moderate limitations in the ability to understand, remember, or apply information because her memory skills were "mildly impaired"). Additionally, the ALJ noted that Ms. Pixley could "launder clothes, manage money, and take public transportation." AR 23. "Being able to use public transportation 'indicat[es] an ability to remember and apply information regarding routes, locations, and schedules' and to pay bills 'indicat[es] an ability to remember when they are due[.]'" *Oxner v. Kijakazi*, No. 12-cv-3066, 2022 WL 17370199, at *6 (D.D.C. Aug. 5, 2022) (quoting *Hall*, 2022 WL 343504, at *5). Thus, Ms. Pixley's daily activities also demonstrate only a moderate limitation. *See id.*

Second, the ALJ correctly found "a moderate limitation in interacting with others because medication helped her condition, and her interactions with medical providers and the ALJ suggested moderate limitation." *Siataga v. Saul*, No. 19-cv-768, 2020 WL 6263926, at *7 (D.D.C. Aug. 20, 2020); *see* AR 23. The ALJ's conclusion was based on Ms. Pixley's "reported periods of self-seclusion" and Drs. Jett's and Williams' conclusions that Ms. Pixley had difficulty interacting with others. *See id.* The ALJ also pointed to Ms. Pixley's claim that she "stays by herself." AR 23. These behaviors reflect only moderate limitations. *See Siataga*, 2020 WL 6263926, at *7 (plaintiff's limitation in interacting with others was only moderate based on her tendency isolate and rapidly changing moods).

Third, the ALJ correctly found that Ms. Pixley also had moderate limitations in her ability to concentrate, persist, or maintain pace when completing tasks. *See* AR 23. The ALJ made this determination based on Ms. Pixley's inability to maintain concentration when "performing complex instructions." AR 23. Nevertheless, she was: "capable of carrying out short simple instructions on a regular basis" when asked; cooperative during her consultative examinations with Drs. Jett and Williams; and her "[m]anner of relating, social skills, and overall presentation were

fair" during these examinations. AR 23, 583. The ALJ properly relied on these factors—particularly the results of the consultative examinations—in determining that Ms. Pixley had only moderate limitations in this subcategory. *See Tiana O.*, 2023 WL 5348747, at *8 (finding that the plaintiff had moderate limitations in concentration, persistence, and pace because she was "engaged and cooperative" and had a "fair attention span" during appointments).

Fourth, the ALJ correctly found that Ms. Pixley had mild limitations in her ability to adapt or manage herself. *See* AR 23. Ms. Pixley "had good and bad days" and needed help from her children. AR 23. However, "she could perform her personal hygiene, toileting and feeding" and "attended her appointments independently using public transportation." AR 23. A person who can "'sleep, eat, . . . groom, and cooperate," has only mild limitations in their ability to adapt or manage themselves. *Oxner*, 2022 WL 17370199, at *6. Thus, "[Ms. Pixley] does not have marked difficulties in daily living." *Id.*

In response to the ALJ's findings, Ms. Pixley largely raises the subjective complaints she made to the medical professionals while downplaying their determinations. *See* Pl.'s Reply at 6–8. But "statements about [the claimant's] pain or other symptoms will not alone establish that [they] are disabled." 20 C.F.R 416.929(a). Indeed, Ms. Pixley only refers to a medical professional's evaluation[4] once: "Ms. Pixley has limitations regarding 'regulating emotions, controlling behavior, and maintaining wellbeing[.]'" Pl.'s Reply at 7 (quoting AR 495). However,

---

[4] Ms. Pixley relies on 20 C.F.R. § 404.1527(c)(2) to argue that the ALJ should have "give[n] more weight to medical opinions from [her] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)." However, § 404.1527 does not apply to SSI applications filed after March 17, 2017. The controlling regulation is 20 C.F.R. § 416.920c(a), which does not require ALJs to "give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." Courts have held that § 404.1527 no longer applies. *See*, *e.g., Stephanie G. v. O'Malley,* No. 22-cv-00094, 2024 WL 2271821 (D.D.C. May 20, 2024) (treating physician rule did not apply to 2019 application).

that medical professional concluded that "[i]n regard to regulating emotions, controlling behavior, and maintaining wellbeing, [Ms. Pixley] has *mild to moderate* limitations." AR 495 (emphasis added). Moreover, Drs. Jett and Williams noted that while her MDD limited her ability to function in the four areas, the limitations were moderate or mild. *See* AR 496, 596–97. The ALJ was well within his discretion to credit these findings. *See supra*. Thus, there was substantial evidence showing that Ms. Pixley "had only moderate limitations in the four areas of mental functioning." *Tiana O.*, 2023 WL 5348747, at *8; *see* AR 23.

ii.     The Paragraph C Criteria

Paragraph C requires claimants to prove that their disorder is "serious and persistent." 20 C.F.R. Part 404, Subpart P, App. 1 § 12.00(A)(2)(c). To do so, a claimant must provide documentation showing that they have had the disorder for at least two years. *See id.* Additionally, they must establish that they actively attend some sort of treatment that "diminishes the symptoms and signs of [their] mental disorder" and that they have "marginal adjustment," or "minimal capacity to adapt to changes in [their] environment or to demands that are not already part of [their] daily life." *Id.*

ALJs "will consider periods of inconsistent treatment or lack of compliance with treatment that may result from [a claimant's] mental disorder" to conclude that a claimant does not meet paragraph C but cannot do so if the non-compliance is a feature of the disorder. 20 C.F.R. Part 404, Subpart P, App. 1, Part A2, § 12.00(G)(2)(b). Thus, the ALJ must "review the case record to determine whether there are explanations for a claimant's failure to follow treatment that might improve her symptoms." *Tiana O.*, 2023 WL 5348747, at *11 (internal quotation marks omitted).

The ALJ properly relied on Ms. Pixley's previous records and consultative exams to conclude that she failed to meet paragraph C. *See* AR 24. The ALJ noted that Ms. Pixley had "at

most intermittent treatment with both her mental health and even medical providers, despite chronic conditions." *Id.* Moreover, Ms. Pixley took "no medication for her psychological impairments, and often [was] in noncompliance with her medication for her [other] impairments." AR 24. For example, during a February 2019 appointment with NP Rhoads, Ms. Pixley agreed to take Celexa, a prescription medication to treat MDD, for 6 to 12 months. *See* AR 24. "[B]ut once she felt her symptoms improved, [Ms. Pixley] said she would stop." AR 24 (citing AR 502). "[Ms. Pixley also] stopped treatment [at times] because she was annoyed that she was only treated with medication, without coinciding therapy." AR 24 (citing AR 440). As another example, in 2021, Ms. Pixley saw a psychiatrist once a week for two months before quitting. *See* AR 24–25. Ms. Pixley's justifications for her noncompliance are unpersuasive because her periodic attendance with professionals demonstrates that she was able to seek treatment and take medication. *See, e.g.*, AR 531; *Micheal C.*, 2022 WL 2305735, at *8 (claimant did not meet the Paragraph C criteria who had reported to medical appointments and claimed he was prescribed medication but had not "had his meds in 2 months" and was given counseling on medication compliance).

"[Ms. Pixley] admitted to noncompliance with medication management because she did not like to take medication." AR 24 (citing AR 473). Ms. Pixley now tries to justify that admission by claiming the medication's side effects were adverse. *See* Pl.'s Reply at 8. However, she failed to raise this argument in the consultative examinations, and only mentioned them briefly during the third hearing. AR 492, 582, 51. In fact, in a report to Dr. Kerr, Ms. Pixley agreed that she "does better" and "regains weight" while taking anti-depressants. AR 473. Further, she "admit[ted] to non-compliance as she doesn't like to take meds." *Id.* Those contemporary statements are more persuasive than justifications created years later in litigation. *See Hall*, 2022 WL 343504, at *12

(upholding the ALJ's determination that the plaintiff's post hoc claims during the administrative hearing did not match the historical record).

And even if the Court considers side effects, they do not justify her noncompliance. At the third hearing, Ms. Pixley claimed that the medication made her "tired" to the point that it was "hard to move around." AR 53. However, "drowsiness should not be viewed as disabling unless the record references serious functional limitations[.]" *Bullock*, 2023 WL 5023380, at *8 (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 555 (3d Cir. 2005)). For example, if drowsiness forces a claimant to "sleep for several hours during the day," or if an ALJ "*ignore*s uncontradicted testimony from [a claimant] that [her] medications caused [her] to be *excessively* drowsy." *Id.* Ms. Pixley does not fall under either such category. Indeed, while on medication, Ms. Pixley reported an "improved mood," that she could "cook[] two to three times a week," and that she maintained her personal hygiene. AR 540, 579. Sustaining a healthy mood and conducting daily activities demonstrates that the drowsiness was not debilitating. *See Bullock*, 2023 WL 5023380, at *6. In other words, adverse side effects were not "the *only* barriers to treatment." *Michael C.*, 2022 WL 2305735, at *7; *see* AR 29. "Substantial evidence thus supports the ALJ's conclusion that [Ms. Pixley's] sporadic treatment history was not solely a function of [adverse side effects]," and instead a choice she independently made not to continue treatment. *Michael C.*, 2022 WL 2305735, at *8.

## IV.    CONCLUSION

For the foregoing reasons, as set out in an accompanying order, the Court will DENY Plaintiff's Motion for Judgment of Reversal and GRANT Defendant's Motion for Judgment of Affirmance.

Date: September 3, 2024

_____

ZIA M. FARUQUI

UNITED STATES MAGISTRATE JUDGE